**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBIN L.M. GILLETTE,** | : | **Civil No.  4:24-CV-834** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I.    Introduction

The instant Social Security appeal highlights two familiar guiding tenets of law in this field. On one hand, we employ a limited scope of review when considering Social Security appeals; our task is simply to determine whether substantial evidence supports the decision of the Administrative Law Judge (ALJ). Consistent with this deferential standard of review, when, as here, we are called upon to assess whether an ALJ has sufficiently articulated a rationale for the mental and

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

emotional components of a claimant's residual functional capacity (RFC), we have recently been instructed that this aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation'" for the mental and emotional limitations imposed upon a worker. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019).

On the other hand, case law imposes a clear obligation upon ALJs to fully articulate their rationale when denying benefits to disability applicants. This duty of articulation is essential to informed judicial review of agency decision-making since, in the absence of a well-articulated rationale for an ALJ's decision, it is impossible to ascertain whether substantial evidence supported that decision. At a minimum, this duty of articulation requires the ALJ to draw a legal and logical bridge between any factual findings and the final conclusion denying the disability claim. Given this well-settled duty of articulation, it follows that, in determining whether substantial evidence supports the decision of the ALJ, a court may not rely on post-hoc rationalizations which are "not apparent from the ALJ's decision itself." Neff v. Colvin, No. 3:14-CV-2278, 2015 WL 4878720, at *14 (M.D. Pa. Aug. 14, 2015) (quoting Haga v. Astrue, 482 F.3d 1205, 1207-08 (3d Cir. 2007)).

The plaintiff in this case, Robin Gillette, suffers from an array of physical and emotional impairments. On top of a history of depression, it is well documented that, following surgeries for brain aneurysms she experienced mild cognitive changes

2

including emotional lability, panic attacks, memory loss, and difficulty multi-tasking. In turn, primarily based on the opinions of two State agency mental consultants, the ALJ found Gillette was mildly limited in interacting with others and concentrating, persisting, or maintaining pace. Despite this finding at Step 2 of the sequential analysis which governs Social Security cases, the ALJ did not address or discuss how these mild impairments would affect Gillette's ability to perform work-related activity and included no limitations for these mental impairments in the RFC.

Thus, this case illustrates the importance of providing "a clear and satisfactory explication," Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), of the basis for the limitations that are revealed by substantial medical evidence. Here, the ALJ's decision fails to adequately summarize and consider all the evidence with regard to the plaintiff's mental impairments both in finding these impairments non-severe at Step 2 and throughout the RFC analysis. Thus, while we still make no categorical rule that an ALJ must incorporate mild limitations in mental functioning in the residual functional capacity, in this case, we find that the ALJ failed to fully articulate the reasons these limitations were not included in the assessment. Accordingly, we conclude that the ALJ's burden of articulation has not been met and we will remand this case for further consideration and evaluation by the Commissioner.

II.    **Statement of Facts and of the Case**

A. **Gillette's Mental Impairments**

On December 9, 2021, Robin Gillette filed an application for a period of disability and disability insurance benefits, alleging disability beginning July 30, 2021. (Tr. 14). While Gilette cited to a number of physical and emotional impairments in her disability application,  in this appeal she focuses exclusively upon her mental impairments of depression and anxiety.

The longitudinal medical record demonstrates she was much more significantly affected by these impairments than indicated in the ALJ's decision. On this score, she frequently complained to her neurologist that procedures she underwent to treat her aneurysm affected her memory and cognition. Indeed, while in the context of appointments for other impairments, mental status notes frequently revealed normal mood, (Tr. 366, 383, 390, 396, 404, 407, 420, 539, 805, 809, 1222), Gillette also complained of severe anxiety with panic attacks following her first surgery, (Tr. 409, 427, 576, 1206), "emotional incontinence," (Tr. 1389), and later sought treatment for cognitive changes following her second procedure including impairments to her memory and concentration. (Tr. 1304-1310, 1388-1391). Moreover, the record demonstrates that Gillette's hesitance to treat her mental illness

with medication was due to previous suicide attempts related to her use of SSRIs. (Tr. 1206, 1211).

Specifically, while, as the Commissioner highlights, ED records from the alleged onset date and throughout 2021 and early 2022 note that she denied emotional problems, anxiety, and cognitive dysfunction, (Tr. 350, 651, 654, 656, 658, 660, 1130, 1132, 1134), her neurology records from the same time period show she had been complaining of severe anxiety which her neurologist was investigating as potentially originating from the coiling procedure for an aneurysm in August 2021. (Tr. 407, 409, 427, 576, 705). In November 2021 she also stated that since the coiling procedure she had developed difficulty with concentration, attention span, and "feeling very crappy." (Tr. 576). Her neurologist increased trazodone and noted she was on lorazepam for panic attacks. (Id.)

Gillette's mood and anxiety seemed to improve until her second surgery for her aneurysm in March 2022 when she reported she had become more emotional and suffered from frequent unexplained crying. (Tr. 1206). She again noted that after her surgeries she experienced memory loss and difficulty with concentration. (Tr. 1207). She also reported two suicide attempts in the past which she related to her use of SSRIs. (Tr. 1206). A mini mental status examination (MMSE) was administered, and she scored 29/30. (Tr. 1210, 1211, 1379). Counseling was recommended for her

"emotional lability" in place of medication due to previous suicide attempts and she was referred for an evaluation at a memory and cognition center. (Tr. 1211).

On June 21, 2022, Gillette was seen for a new patient consultation at Geisinger Memory and Cognition Program. She reported memory issues, difficulty finding words, noting people fill in words for her, problems handling complex tasks and difficulty with attention and concentration. (Tr. 1304). She also reported apathy, little interest in things she used to like to do, fatigue, and appetite changes. (Id.) She scored 25/30 on a Montreal Cognitive Assessment (MoCa) indicating she had a mild impairment. (Tr. 1377). At a follow-up in January 2023, it was noted "she performs well with cognitive screening measures but has more 'executive control' type issues." (Tr. 1388). In fact, the notes stated that her behavioral issues, including frequent unexplained crying, were suspected to be "pseudobulbar palsy" rather than actual emotional lability. (Id.) Gillette noted that she could not multi-task like she used to and that even unpacking a bag was overwhelming. (Tr. 1389). She scored 33/41 on a Telephone Interview for Cognitive Status (TICS) which was on the low side of non-impaired and her delayed recall was only 5/10. (Tr. 1391). She was referred for cognitive rehabilitation. (Tr. 1389).

Based upon this medical record, two state agency mental consultants opined on Gillette's mental RFC. No examining expert provided an opinion on her mental

6

limitations. Based upon their review of this medical record, state agency mental consultants Dr. Anthony Galdieri and Dr. Paul Thomas Taren concluded Gillette had mild limitations in her ability to interact with others and concentrate, persist, or maintain pace but no limitations in understanding, remembering, or applying information or adapting or managing oneself. (Tr. 61, 71). Both medical experts concluded her mental impairments were nonsevere. (Id.)

It was against this clinical backdrop that this disability claim was heard by the ALJ.

## B. **The ALJ Hearing and Decision**

On December 7, 2022, an ALJ conducted a hearing regarding Gillette's disability claim. (Tr. 32-57). Gillette reiterated her frequent unexplained crying, likely due to swelling from her brain surgery, anxiety and stress, inability to multi-task, and poor memory. (Tr. 45-46). She reported panic attacks and crying for no reason which she was treating with Lorazepam. (Tr. 47-48). Thus, the issue of the impact of Gillette's mental impairments on her ability to work was squarely before the ALJ at this hearing.

A vocational expert also testified at this hearing in a fashion which called for some consideration of the potentially disabling impact of Gillette's mental impairments. Although the ALJ did not pose any hypotheticals to the vocational

7

expert which included mental limitations, in response to Gillette's attorney's questioning, the expert stated that a limitation to occasional interaction with others would preclude her from past work and that if she were off task for 15% or more of the time consistently or absent consistently eight hours or more per month, she would be unable to sustain employment. (Tr. 55).

Following this hearing, the ALJ issued a decision denying the plaintiff's disability application on June 9, 2023. (Tr. 11-26). In that decision, the ALJ first concluded that the plaintiff had not engaged in substantial gainful activity since July 30, 2021, the alleged onset date and had met the insured status requirements of the Act through March 31, 2024. (Tr. 16).  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that the plaintiff suffered from the following severe impairments: degenerative disc disease/cervical spondylosis of the cervical spine, spondylosis of the lumbosacral spine with disc herniation at the L4-5 and L5-S1 levels, primary generalized osteoarthritis, and right ophthalmic artery aneurysm. (Tr. 17).

The ALJ concluded at this step that Gillette's medically determinable mental impairments of generalized anxiety disorder and major depressive disorder were nonsevere. In considering these impairments, the ALJ considered the four areas of cognitive functioning known as "paragraph B" criteria. The ALJ addressed each of

these areas in a single paragraph which mentioned her subjective complaints and
activities of daily living, and stated generally that she performed well on cognitive
screenings "which noted no deficits," but did not cite to any of the medical records
and glossed over well-reported treatment for these mental impairments, including
participation in the Memory and Cognition Program. The ALJ's brief treatment of
these impairments stated:

> The undersigned finds the claimant has no limitation in understanding,
> remembering, or applying information and adapting or managing
> oneself. She has no more than mild limitations in interacting with others
> and concentrating, persisting, or maintaining pace. The claimant alleges
> difficulty with memory, completing tasks, concentration,
> understanding, following instructions, and getting along with others
> (Exhibit 10E, p. 6). However, she also reported performing daily
> activities including caring for her personal needs, caring for a pet,
> preparing meals, cleaning, doing laundry, driving, shopping in stores
> and by mail, handling finances, going to the movies, and socializing by
> text and video chat (Exhibits 5E and 10E). Medical records show the
> claimant has had issues of emotional lability and she reported short
> temper and trouble concentrating, but she performed well with
> cognitive screening, which noted no deficits. She was diagnosed only
> with mild cognitive changes. (Exhibit 13F, pp. 6, 9).

(Tr. 17-18). The ALJ also considered the opinions of Dr. Galdieri and Dr. Taren at
this step, finding them persuasive and seemingly adopting their mild limitations in
interacting with others and concentrating, persisting, or maintaining pace.

At Step 3 the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 14-16).

The ALJ then fashioned the following RFC for the plaintiff:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently handle, finger, and feel with the bilateral upper extremities. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold, noise above a moderate level, vibration, and hazards.

(Tr. 19).

Notably, this RFC made no accommodations for the plaintiff's mild limitations in interacting with others and concentrating, persisting, or maintaining pace, despite having been informed by the vocational expert that certain limitations in these arenas could potentially preclude employment. Moreover, despite the ALJ mentioning at Step 2 that "the mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires more detailed assessment" the ALJ seemingly never conducted this detailed assessment of Gillette's mental impairments, citing few objective mental examination findings within the context of her medical records of her physical impairments, but notably omitting any summary of her treatment with the Memory and Cognition Program

10

and nearly all neurology notes citing her frequent complaints of difficulty completing tasks and emotional lability as well as memory and cognition issues which had been well-documented and acknowledged by her providers.

Based upon this RFC determination, which failed to consider or address the majority of the treatment records regarding Gillette's mental impairments, the ALJ determined that Gillette could perform her past skilled work as a pharmacy technician and telephone representative and denied her claim. (Tr. 25-26).

This appeal followed. (Doc. 1). On appeal, the plaintiff's sole argument is that the ALJ failed to account for her mild limitations in mental functioning in the RFC assessment. While, in the past, we have declined a categorical rule with regard to the requirement that an ALJ include limitations in an RFC based upon only mild limitations in areas of mental functioning, in this case due to the cursory and incomplete treatment of the well-documented effects of these impairments, more is needed here. Thus, we find that the ALJ's failure to address or account for these medically determinable conditions in the RFC assessment was error. Therefore, we will remand this case for further consideration and evaluation of the evidence.

## III.    <u>Discussion</u>

### A.    <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable

14

meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d
501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
particular "magic" words: "<u>Burnett</u> does not require the ALJ to use
particular language or adhere to a particular format in conducting his
analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's

mental RFC. In <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals recently addressed the standards of articulation that

apply in this setting. In <u>Hess</u> the court of appeals considered the question of whether

an RFC which limited a claimant to simple tasks adequately addressed moderate

limitations on concentration, persistence, and pace. In addressing the plaintiff's

argument that the language used by the ALJ to describe the claimant's mental

limitations was legally insufficient, the court of appeals rejected a *per se* rule which

would require the ALJ to adhere to a particular format in conducting this analysis.

Instead, framing this issue as a question of adequate articulation of the ALJ's

rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in

18

engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." <u>Biller</u>, 962 F.Supp.2d at 778–79 (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the

19

proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here,  where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ

20

has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

It is against these legal benchmarks that we assess the instant appeal.

## C.    <u>This Case Should Be Remanded.</u>

In the past, we have affirmed cases in which an ALJ concluded a claimant had mild impairments in some areas of mental functioning but did not include any mental limitations in the RFC. <u>See e.g.</u> <u>Nelson v. Bisignano</u>, No. 4:24-CV-263, 2025 WL 2713743 (M.D. Pa. Sept. 23, 2025); <u>Lankford v. O'Malley</u>, No. 3:23-CV-1106, 2024 WL 5078104 (M.D. Pa. Dec. 11, 2024). In doing so, we have declined to adopt a categorical rule regarding when an ALJ must include mental limitations in the RFC. This approach is guided by <u>Hess</u>, which instructs us not to gauge the adequacy of the mental RFC in the abstract but rather view the evaluation of a claimant's ability to undertake the mental demands of the workplace in the factual context of the case, finding a mental RFC sufficient if it is supported by a valid explanation grounded in the evidence. Our assessment of the ALJ's decision is further guided by the Third Circuit's mandate that "the ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." <u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d at 504 (citations omitted).

Under these guideposts, we conclude the ALJ's RFC assessment in this particular case was insufficient in that it ignored objective medical evidence of Gillette's mental impairments and failed to fully and adequately address these impairments in the RFC assessment. At the outset, while "the ALJ's consideration

of the individual's non-severe impairments does not amount to a requirement that the ALJ must include limitations in the RFC associated with mild impairments," Weidner v. Kijakazi, No. CV 20-1250-MN, 2022 WL 610702, at *9 (D. Del. Feb. 1, 2022), report and recommendation adopted, No. CV201250MNSRF, 2022 WL 610678 (D. Del. Feb. 16, 2022) (citing Smith v. Comm'r of Soc. Sec., 2016 WL 3912850, at *9 (D.N.J. July 19, 2016)), it is well settled that, despite a finding of non-severe mental impairments at Step 2, an ALJ must at least consider those impairments when fashioning the RFC. Indeed, this Court has recognized the requirement that:

> As a general matter, an ALJ must consider limitations and restrictions associated with all of a claimant's impairments, both severe and non-severe, when formulating the RFC. 20 C.F.R. § 404.1545(a)(2). "[T]he Commissioner's procedures do not permit the ALJ to simple rely on his finding of non-severity as a substitute for a proper RFC analysis." Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013). "A conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ to simply disregard those impairments when assessing a claimant's RFC and making conclusions at step four and five." Id. at 1068–69.

Kich v. Colvin, 218 F. Supp. 3d 342, 355–56 (M.D. Pa. 2016).

Nonetheless, the requirement in Wells that an ALJ must explain the reasons for excluding mild mental functional limitations is cabined by the Third Circuit's holding in Hess that an ALJ's mental RFC assessment should be upheld "as long as the ALJ offers a 'valid explanation,'" for that assessment. Hess v. Comm'r Soc. Sec.,

931 F.3d 198, 211 (3d Cir. 2019). Indeed, as previously noted, an ALJ offers a valid explanation of a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019). See also Shaffer v. Colvin, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) ("It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence."); McCafferty v. Astrue, 2008 WL 1869282, at *4 (E.D. Pa. Apr. 25, 2008) (finding that the requirements of SSR 96-8p were satisfied by ALJ's narrative discussion of the claimant's functional limitations in the context of the objective medical evidence, doctors' notes and opinions, the claimant's activities of daily living, and the claimant's subjective complaints).

Here, while the ALJ stated in a conclusory manner the factors which were considered in arriving at the RFC assessment, (Tr. 23), the ALJ entirely excluded from his analysis any consideration of the limited yet meaningful longitudinal medical evidence of Gillette's mental impairments, including that she was being

seen by a specialist at Geisinger Memory and Cognition for memory problems following her aneurysm surgeries and, while she scored on the low side of normal in cognitive testing, it was noted that while she "performs well with cognitive screening measures" she had more "executive control type issues." (Tr. 1388). Moreover, the ALJ's cursory and conclusory acknowledgement of the cognitive screening measures stated that "she performed well with cognitive screening, which noted no deficits," despite her scoring 25/30 on a June 2022 MoCA, indicating a mild impairment, and 33/41 on a January 2023 TICA, just above a score of "ambiguous." Moreover, the Step 2 assessment finding that her mental impairments were nonsevere did not cite to any medical records. Thus, while our independent review of the record, guided by the briefing of the Commissioner, shows substantial evidence supports the ALJ's conclusion that Gillette may have experienced mild impairments in several areas of mental functioning, the ALJ's failure to discuss meaningful portions of the medical record which demonstrate the ways in which Gillette's ability to perform work related activity was affected by these impairments prevents us from determining whether it was error in not including any mental limitations in the RFC.

Further, when the Commissioner posits a more thoroughly articulated rationale for this cursory decision, it is well-settled that we may not rely on the

Commissioner's post-hoc rationalizations which are "not apparent from the ALJ's decision itself." Neff v. Colvin, No. 3:14-CV-2278, 2015 WL 4878720, at *14 (M.D. Pa. Aug. 14, 2015) (quoting Haga v. Astrue, 482 F.3d 1205, 1207-08 (3d Cir. 2007)).

Here, the ALJ's error potentially prejudiced consideration of Gillette's case. The ALJ's omission of any meaningful discussion regarding the medical documentation supporting her subjective complaints of memory loss, difficulty multi-tasking, emotional lability, and cognitive functioning deprives the Court of the ability to conduct meaningful review, since we are without answers as to the ALJ's reasoning for failing to include any mental limitations in the RFC assessment. Our view is consistent with prior findings in this Court and supported by other courts who have found that remand is necessary when an ALJ omits mild mental functional limitations identified at Step 2 without a valid explanation. See Wells v. Colvin, 727 F.3d 1061, 1068-71 (10th Cir. 2013); Gunn v. Kajikazi, 705 F. Supp. 3d 315, 330-31 (E.D. Pa. 2023); Kich v. Colvin, 218 F. Supp. 3d 342, 357 (M.D. Pa. 2016). Indeed, "judges in this District have consistently held that even mild limitations in the relevant domains of mental functioning must be included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon." Meersand v. Kijakazi, No. 20-1084, 2021 WL 5003331, at *3 (E.D. Pa. Oct. 28, 2021) (collecting cases). Here, the ALJ made no explicit finding that the mild limitations in "paragraph

26

B" functioning were so minimal that they would not limit her ability to perform simple tasks. Moreover, the ALJ did not include any hypothetical questions to the VE that would have addressed these mild limitations in functioning. This was error.

Finally, this error is not harmless where, upon questioning by the plaintiff's attorney, the vocational expert testified that a limitation to occasional interaction with others would preclude Gillette from past work and that if she were off-task for 15% or more of the time consistently or absent consistently eight hours or more per month, she would be unable to sustain employment. (Tr. 55). Further, the cursory treatment of Gillette's mental impairments both at Step 2 and throughout the RFC analysis did not cite to specific portions of the record and wholly ignored relevant objective testing and treatment for these conditions.

Simply put, more is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here where the limiting effects of Gillette's mental impairments were never fully evaluated by the ALJ. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that

27

nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ <u>*Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

Dated: October  1, 2025